# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **K.C.-1**

**No. 17-0835** (Cabell County 16-JA-54)

**FILED**

**February 23, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father K.C.-2, by counsel Richard L. Vital, appeals the Circuit Court of Cabell County's August 24, 2017, order terminating his parental rights to K.C.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem ("guardian"), Steven M. Wright, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights because incarceration was not a sufficient ground for termination, because the acts and omissions of the mother were imputed upon him, and because a less-restrictive alternative than termination of his parental rights was available.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2016, the DHHR filed an abuse and neglect petition against petitioner alleging that the infant, K.C.-1, was born and subsequently placed in intensive care due to a diagnosis of respiratory syncytial virus. The DHHR alleged that the mother began methadone treatment in September of 2015 and used heroin during her pregnancy with K.C.-1. At birth, the child suffered from neonatal abstinence syndrome due to her mother's drug abuse during pregnancy. The DHHR also alleged the mother had her parental rights to another child involuntarily terminated and that petitioner was in federal prison and failed to provide for K.C.-1 emotionally and financially. In November of 2016, petitioner's brother, sister-in-law, and mother filed a motion to intervene in the proceedings. In April of 2017, the circuit court held an

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because the child and petitioner have the same initials, they will be referred to as K.C.-1 and K.C.-2, respectively.

adjudicatory hearing. Petitioner was incarcerated at the time, but was represented by counsel. The circuit court denied petitioner's family members' motion to intervene.

In June of 2017, the circuit court held a dispositional hearing. A Child Protective Services ("CPS") worker testified that the child had been with her foster parents for over a year and that petitioner had not participated in a family case plan due to his incarceration. According to the CPS worker, petitioner indicated that he and the mother planned to have a child while he was incarcerated. The CPS worker believed petitioner was selling drugs and the mother was using drugs at the time they conceived the child. Petitioner testified by phone due to his incarceration. He testified that his expected release date was March of 2018. He further testified that he had not seen the child; however, he wrote letters to the DHHR asking for the procedures to obtain visitation, but did not receive a response to his inquiries. He further testified that he completed a residential drug program, a parenting class, and received a parenting class certificate in prison. Additionally, he explained that he sent twenty percent of his pay to Child Protective Services for child support.

Petitioner explained that he planned to conceive the child in May of 2015, knowing he would be incarcerated starting in June of 2015 to serve a fifty-eight month sentence. Petitioner was also aware that the mother did not have custody of two of her children due to her drug abuse, but did not believe that would affect their child together. Petitioner further testified that he was aware that the infant was born with substances in her system, but believed it was due to medication the mother received from her dentist. Upon inquiry by the circuit court, petitioner stated that he was imprisoned due to selling Roxycontin pills to a Drug Enforcement Administration officer and that it was his third felony conviction. The other two convictions were for breaking and entering and delivery of a controlled substance. The circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and that termination was in the child's best interests. Ultimately, the circuit court terminated petitioner's parental rights in its August 24, 2017, order.[2] It is from this dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record

_____

[2]In addition to petitioner's parental rights being terminated, the mother's parental rights were also terminated. The permanency plan for the child is to be adopted by her foster parents.

viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

First, petitioner argues that his incarceration was not a sufficient ground for termination of his parental rights. He asserts that because he was incarcerated for a non-violent crime and because his release date was predicted to be in March of 2018, termination was improper. We disagree. We have held that,

> [w]hen no factors and circumstances other than incarceration are raised at a disposition hearing in a child abuse and neglect proceeding with regard to a parent's ability to remedy the condition of abuse and neglect in the near future, the circuit court shall evaluate whether the best interests of a child are served by terminating the rights of the biological parent in light of the evidence before it. This would necessarily include but not be limited to consideration of the nature of the offense for which the parent is incarcerated, the terms of the confinement, and the length of the incarceration in light of the abused or neglected child's best interests and paramount need for permanency, security, stability and continuity.

Syl. Pt. 3, *In re Cecil T.*, 228 W. Va. 89, 91, 717 S.E.2d 873, 875 (2011).

Here, the circuit court clearly considered the factors listed above. Although petitioner argues that termination was improper because he was incarcerated for a non-violent crime, his drug convictions raise concern as both parents have a history of drug abuse and the child was born addicted to drugs. Further, petitioner intentionally planned to conceive a child in May of 2015, knowing that he would be incarcerated in June of 2015. Therefore, petitioner was absent from the early years of the child's life and to postpone the final disposition in the case until petitioner is released from prison would unduly delay permanency for the child. Furthermore, "this Court has never held that incarceration can not be the sole basis for terminating parental rights." *Id.* at 96, 717 S.E.2d at 880. Accordingly, we find no error.

Next, petitioner argues termination was improper due to the acts or omissions of the mother that were imputed upon him. Petitioner's argument is unclear, but he seems to argue that if he had known the mother was going to use drugs during her pregnancy and after giving birth, he would not continue to be in a relationship with her. However, petitioner's argument fails to acknowledge that the child was born addicted to drugs, and due to his incarceration, he could not care for the child. West Virginia Code § 49-1-201 provides that "neglected child" means a child "[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent, guardian or custodian to supply the child with necessary . . . supervision[.]"

Petitioner was incarcerated during the mother's pregnancy, the birth of the child, and the early years of the child's life, and therefore, he was unable to provide proper supervision for the child, which constitutes neglect. Further, he was unable to care for the child while she was suffering from symptoms of withdrawal due to the mother's drug use during pregnancy.

3

Therefore, we find that petitioner's acts and omissions, rather than the mother's, ultimately led to the termination of his parental rights and, accordingly, we find no error.

Finally, petitioner argues that the circuit court abused its discretion in terminating his parental rights rather than employing a less-restrictive alternative. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) provides that no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected exists when "[t]he abusing parent . . . ha[s] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]" Further, we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011).

Due to his incarceration, petitioner failed to provide for the child and was absent from her life during critical early years. Petitioner argues that, throughout the proceedings, he tried to be involved in the case by writing letters and trying to get a furlough to attend the dispositional hearing. However, petitioner fails to recognize that his willful conduct resulted in his incarceration and subsequent inability to properly care for the child. Petitioner asserts that he quit using illegal drugs around the time the child was conceived and obtained drug treatment while incarcerated. Nevertheless, petitioner was incarcerated due to drug charges and therefore absent from the child's life and unable to provide her with supervision or care. Based on this evidence, the circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected and that termination was in the best interests of the child. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are to terminate parental rights upon such findings. Therefore, we find that termination of petitioner's parental rights was the least-restrictive alternative and the circuit court did not err.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 24, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: February 23, 2018

4

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker